## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| CHICAGO & VICINITY LABORERS' | ) | |
| DISTRICT COUNCIL PENSION FUND, | ) | |
| CHICAGO & VICINITY LABORERS' | ) | |
| DISTRICT COUNCIL WELFARE FUND, | ) | |
| CHICAGO & VICINITY LABORERS' | ) | |
| DISTRICT COUNCIL RETIREE HEALTH | ) | |
| AND WELFARE FUND, and CATHERINE | ) | |
| WENSKUS, not individually but as | ) | |
| Administrator of the Funds, | ) | |
| | ) | |
| Plaintiffs, | ) | Judge |
| v. | ) | |
| | ) | Case No.: 20 C 2282 |
| BECHSTEIN CONSTRUCTION, CORP., an | ) | |
| Illinois corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>COMPLAINT</u>

Plaintiffs, Chicago & Vicinity Laborers' District Council Pension Fund, Chicago &

Vicinity Laborers' District Council Health & Welfare Fund, Chicago & Vicinity Laborers'

District Council Retiree Health & Welfare Fund, and Catherine Wenskus, not individually but as

Administrator of the Funds, (collectively the "Funds"), by their attorneys Patrick T. Wallace,

Amy N. Carollo, G. Ryan Liska, Katherine C.V. Mosenson and Sara S. Schumann, and for their

Complaint against Bechstein Construction, Corp., state:

### COUNT I

### (Failure to Submit Benefit Contributions)

1.      Jurisdiction is based on Sections 502(e)(1) and (2) and 515 of the Employee

Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. §§1132 (e)(1) and

(2) and 1145, Section 301(a) of the Labor Management Relations Act ("LMRA") of 1947 as amended, and 29 U.S.C. §185(a), 28 U.S.C. §1331.

2.      Venue is proper pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. §1132(e)(2), and 28 U.S.C. §1391 (a) and (b).

3.      The Funds are multiemployer benefit plans within the meanings of Sections 3(3) and 3(37) of ERISA. 29 U.S.C. §1002(3) and 37(A). They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with Section 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have offices and conduct business within this District.

4.      Plaintiff Catherine Wenskus ("Wenskus") is the Administrator of the Funds, and has been duly authorized by the Funds' Trustees to act on behalf of the Funds in the collection of employer contributions owed to the Funds and to the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund, and with respect to the collection by the Funds of amounts which have been or are required to be withheld from the wages of employees in payment of Union dues for transmittal to the Construction and General Laborers' District Council of Chicago and Vicinity (the "Union"). With respect to such matters, Wenskus is a fiduciary of the Funds within the meaning of Section 3(21)(A) of ERISA, 29 U.S.C. §1002(21)(A).

5.      Defendant Bechstein Construction, Corp., (hereinafter collectively referred to as "Bechstein" or the "Company") is an Illinois corporation and at all times relevant did business within this District and is an employer within the meaning of Section 3(5) of ERISA, 29 U.S.C. §1002(5), and Section 301(a) of the LMRA, 29 U.S.C. §185(c).

2

6. The Union is a labor organization within the meaning of 29 U.S.C. §185(a). At all times relevant herein, the Union and the Company have been parties to successive collective bargaining agreements, the most recent of which became effective June 1, 2017 (A true and accurate copy of the Independent Construction Industry Collective Bargaining Agreement signed by the Company which adopts and incorporates the various area-wide collective bargaining agreements and the Funds' respective Agreements and Declarations of Trust is attached hereto as Exhibit A).

7. The Funds have been duly authorized to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which should have been or have been deducted from the wages of covered employees. Further, the Funds have been duly authorized by the Construction and General Laborers' District Council of Chicago and Vicinity Training Fund (the "Training Fund"), the Midwest Construction Industry Advancement Fund ("MCIAF"), the Mid-American Regional Bargaining Association Industry Advancement Fund ("MARBA"), the Chicagoland Construction Safety Council (the "Safety Fund"), the Laborers' Employers' Cooperation and Education Trust ("LECET"), the Concrete Contractors Association ("CCA"), the CDCNI/CAWCC Contractors' Industry Advancement Fund (the "Wall & Ceiling Fund"), the CISCO Uniform Drug/Alcohol Abuse Program ("CISCO"), the Laborers' District Council Labor Management Committee Cooperative ("LDCLMCC"), the Will Grundy Industry Trust Advancement Fund ("WGITA"), the Illinois Environmental Contractors Association Industry Education Fund ("IECA Fund"), the Illinois Small Pavers Association Fund ("ISPA"), and the Chicago Area Independent Construction Association ("CAICA") to act as an agent in the collection of contributions due to those Funds.

3

8.     The Agreement and the Funds' respective Agreements and Declarations of Trust obligate the Company to make contributions on behalf of its employees covered by the Agreement for pension benefits, health and welfare benefits, and/or benefits for the training fund and to submit monthly remittance reports in which the Company, *inter alia*, identifies the employees covered under the Agreement and the amount of contributions to be remitted to the Funds on behalf of each covered employee.  The Company is obligated to pay between 10% liquidated damages on late-paid contributions, 20% liquidated damages on late-paid, Pension, Welfare, Retiree Welfare and Training Fund contributions, plus interest at a rate of 12% from the date the contributions were due until the contributions are paid.

9.     The Agreement and the Funds' respective Agreements and Declarations of Trust requires the Company to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

10.     The Agreement requires the Company to obtain and maintain a surety bond to guaranty the payment of future wages, pension and welfare benefits.

11.     Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company has:

(a)     failed to submit benefit reports and contributions for the period of January 2020 forward, thereby depriving the Pension Fund of information and income necessary to administer the Fund;

(b)     failed to submit benefit reports and contributions for the period of January 2020 forward, thereby depriving the Welfare Fund of information and income necessary to administer the Fund;

4

(c)     failed to submit benefit reports and contributions for the period of January 2020 forward, thereby depriving the Retiree Welfare Fund of information and income necessary to administer the Fund; and

(d)     failed to submit benefit reports and contributions for the period of January 2020 forward, thereby depriving the Training Fund of information and income necessary to administer the Fund.

12.     The Company failed to submit timely payment of its March through July 2019 and October and November 2019 benefit reports. Accordingly, the Company owes $8,617.86 in accumulated liquidated damages on those late-paid reports plus interest.

13.     The Company's actions in failing to submit timely payment of benefit contributions reports violates Section 515 of ERISA, 29 U.S.C. §1145.

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Defendant Bechstein Construction, Corp. as follows:

a.     Ordering the Company to submit and pay benefit reports for the period of January 2020 forward and ordering the Company to submit its books and records to an audit for the period of October 1, 2017 forward;

b.     entering judgment in favor of the Funds and against Defendant for the amount of any unpaid contributions, liquidated damages and accumulated liquidated damages, plus interest and Plaintiffs' reasonable attorneys' fees and costs on late and unpaid contributions from the period October 1, 2017 forward; and

c.     awarding Plaintiffs any further legal and equitable relief as the Court deems appropriate.

## COUNT II

### (Failure To Submit Benefit Contributions)

14.     Plaintiffs reallege paragraphs 1 through 13 of Count I.

15.     Pursuant to agreement, the Funds have been duly designated to serve as collection agents for the Union in that the Funds have been given the authority to collect from employers union dues which have been or should have been deducted from the wages of covered employees.

16.     Notwithstanding the obligations imposed by the Agreement and the Funds' respective Agreements and Declarations of Trust, the Company has failed to submit and pay dues reports for the period of January 2020 forward.

17.     The Company has failed to timely submit and pay dues reports for the period of March through June 2019 and therefore owes in accumulated liquidated damages on late paid dues reports in the amount of $333.50.

18.     Under the terms of the Agreement the Company is liable for the unpaid reports, accumulated liquidated damages and to submit its books and records to an audit upon demand for the period of October 1, 2017 forward and to pay any amounts revealed as due and owing therein.

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment in favor of Plaintiffs and against Bechstein Construction, Corp.:

　　　a.  ordering the Company to submit and pay dues reports for the period of January 2020 forward:

　　　b.  ordering the Company to submit its books and records to an audit for the period of October 1, 2017 forward;

6

    c.   entering judgment in favor of Plaintiffs and against the Company for any unpaid dues, liquidated damages, accumulated liquidated damages, audit costs, and Plaintiffs' reasonable attorneys' fees and expenses; and

    d.   awarding Plaintiffs any additional legal and equitable relief as the Court deems appropriate.

April 13, 2020

                                      Chicago & Vicinity Laborers' District Council Pension Fund, et al.

                                        By:  /s/ Patrick T. Wallace

Office of Fund Counsel
111 W. Jackson Blvd., Suite 1415
Chicago, IL  60604
(312) 692-1540



HEADQUARTERS OF

# Construction & General Laborers'
# District Council of Chicago and Vicinity

Affiliated with the Laborers International Union of North America, A. F. of L. – C. I. O. —

6121 WEST DIVERSEY AVENUE • CHICAGO, ILLINOIS 60639 • PHONE: 312-237-7637 • FAX: 312-237-3417

LOCALS 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1006, 1035, 1092

Joseph A. Lombardo, Jr.
Secretary-Treasurer

**MEMORANDUM OF JOINT WORKING AGREEMENT**

Bruno Caruso
President
Business Manager

It is hereby stipulated and agreed by and between __Bechstein Construction__ (herein called the "EMPLOYER", and the CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY, herein called the "UNION", representing and encompassing Local Nos. 1, 2, 4, 5, 6, 25, 75, 76, 96, 118, 149, 152, 225, 269, 288, 582, 681, 1001, 1005, 1035, 1092, and encompassing the geographical areas of the counties of Cook, Lake, DuPage, Will, Grundy, Kendall, Kane, McHenry, and Boone, in the State of Illinois, together with any other Locals which may come within the jurisdiction of the UNION, that:

1. Employer, in response to the Union's claim that it represents an uncovered majority of each Employer's laborer employees, acknowledges and agrees that there is no bona fide doubt that the Union has been authorized to and in fact does represent such majority of laborer employees. Therefore, the Union is hereby recognized as the sole and exclusive collective bargaining representative for the employees now or hereafter employed in the bargaining unit with respect to wages, hours of work, and other terms and conditions of employment in accordance with Section 9 of the National Labor Relations Act without the need for a Board Certified Election.

2. The Collective Bargaining Agreements between the UNION and the Builders Association of Chicago and Vicinity, the Concrete Contractors Association of Greater Chicago, the Illinois Road Builders Association, the Underground Contractors Association, Mason Contractors Association of Greater Chicago, Street Paving and Ground Separation Contractors, G.D.C.N.I./C.A.W.C.C., Chicago Building Wreckers Association, Lumber Trade Association, Lake County Contractors Association, Lake County Paving Contractors Association and Sewer Contractor Association, Association of Wall and Ceiling Contractors of Lake County, and all other associations with whom the District Council or any of its affiliated local unions has a duly negotiated agreement, and re-establishes all agreements from June 1, 1976, together with all amendments thereto. It is further agreed that where a contractor works in the jurisdiction of any local UNION, then the agreement of the local Union is herein specifically incorporated in this agreement and shall supersede the standard District Council agreement in the case of any conflict between the District Council agreement and the local agreement having to do with wages, benefits, or conditions of employment. Nothing herein shall limit the jurisdiction of this agreement to less than that provided in this Memorandum of Agreement.

3. The EMPLOYER agrees to pay the amounts which (he) (it) is bound to pay under said Collective Bargaining Agreements to the HEALTH AND WELFARE DEPARTMENT OF CONSTRUCTION AND GENERAL LABORERS DISTRICT COUNCIL OF CHICAGO AND VICINITY, to the LABORERS PENSION FUND, and to the CONSTRUCTION AND GENERAL LABORERS' DISTRICT COUNCIL OF CHICAGO AND VICINITY TRAINING TRUST FUND and to become bound by and be considered a party to the Agreements and the Declaration of Trusts creating said Trust Funds as if (he) (it) had signed the original copies of the Trust Instruments and amendments thereto. The EMPLOYER ratifies and confirms the appointment of the EMPLOYER Trustees who shall, together with their successor Trustees designated in the manner provided in said Agreements and Declaration of Trusts administer said Funds, and with an equal number of Trustees appointed by the UNION, carry out the terms and conditions of the Trust Instruments.

The EMPLOYER further affirms and re-establishes that all prior contributions paid to the Welfare, Pension and Training Funds were made by duly authorized agents of the EMPLOYER at the proper rates for the appropriate periods of time and that by making said prior contributions, the EMPLOYER evidences the intent to be bound by the terms of the Trust Agreements and Collective Bargaining Agreements which were operative at the time the contributions were made, acknowledging the report form to be a sufficient instrument in writing to bind the EMPLOYER in the applicable agreements.

4. Employees covered by this Memorandum of Agreement shall retain all the work traditionally performed by laborers. The EMPLOYER agrees that he will not cause any such traditionally performed work to be done at a construction site by employees other than those covered by this Memorandum of Agreement, except with the prior written consent of the UNION. Any EMPLOYER who contracts out or sublets any of the work coming within the jurisdiction of the UNION shall assume the obligations of any subcontractor for prompt payment of employees' wages and other benefits, including reasonable attorneys' fees incurred in enforcing the provisions hereof. Notwithstanding any agreement to the contrary, the EMPLOYER's violation of any provision of this paragraph will give the UNION the right to take any other lawful action, including all remedies at law or equity.

5. In the event of any change in the ownership, management, or operation of the EMPLOYER's business by sale or otherwise, it is agreed that as a condition of such transfer or change it shall be provided in the instrument effecting the change that the new owner and management shall be fully bound by the terms and conditions of this Agreement. This Agreement is applicable to all successors and transferors of the EMPLOYER, whether corporate or otherwise.

6. The negotiated wage and fringe benefit contribution rates in the various Collective Bargaining Agreements are as follows:

| | |
|---|---|
| June 1, 1995<br>to<br>May 31, 1996 | $20.85 Per Hour Wages<br>$3.12 Per Hour Health and Welfare Fund<br>$1.45 Per Hour Pension Fund<br>$ .10 Per Hour Training Fund<br>$ .02 Per Hour MCIAF (or such amount as provided in local agreement)<br>$ .01 Per Hour Chicagoland Safety Council (if applicable in local agreement)<br>Dues Deductions are $.25 Per Hour for each hour worked unless notified of an increase. |
| June 1, 1996<br>to<br>May 31, 1997 | $1.00 Per hour increase for the June 1, 1996 through May 31, 1997 to be allocated between wages and fringe benefits by the Union in its sole discretion.<br>Welfare, Pension, and Training Funds to remain the same additional sums are allocated.<br>MCIAF and Chicagoland Safety Council remain as above for the life of the contract.<br>Dues Deductions are $.25 Per Hour unless notified of an increase. |
| June 1, 1997<br>to<br>May 31, 1998 | $1.00 Per hour increase for the year June 1, 1997 through May 31, 1998, to be allocated between wages and fringe benefits by the Union in its sole discretion.<br>Welfare, Pension, and Training Funds to remain the same additional sums are allocated.<br>MCIAF and Chicagoland Safety Council remain as above for the life of the contract.<br>Dues Deductions are $.25 Per hour unless notified of an increase. |

All additional wage rate dues checkoff, or fringe benefit increases as negotiated after May 31, 1998, shall be incorporated in this Memorandum of Agreement.

7. Effective June 1, 1995, all EMPLOYERS covered by this Memorandum of Agreement incorporating the various Collective Bargaining Agreements shall deduct from the wages of employees covered by said contract, working dues in the amount of Twenty-Five Cents ($.25) for each straight time hour worked and Twenty-Five Cents ($.25) for each overtime hour worked, and shall remit monthly to the UNION office designated by the EMPLOYER by the District Council the sums so deducted, together with an accurate list of employees from whose wages said dues were deducted and the amounts applicable to each employee, not later than the 15th day of the month following the month for which said deductions were made.

8. It is the intention of the parties that such deductions shall comply with the requirements of Section 302(c)(4) of the Labor Management Relations Act of 1947, as amended and such deductions be made only pursuant to written agreements from each employee on whose account such deductions are being made, which assignment shall not be irrevocable for a period of more than one year or beyond the termination date of the Memorandum of Agreement, whichever occurs sooner.

9. The Agreement shall remain in full force and effect through May 31, 1998 and shall continue thereafter unless there has been given written notice, by registered or certified mail by either party hereto received not less than 90 days prior to the expiration date, of the desire to modify and amend this Agreement through negotiations. In the absence of such notice, the EMPLOYER and the UNION agree to be bound by the area-wide negotiated contracts with the various Associations, incorporating them into this Agreement and extending this Agreement for the life of the newly negotiated contracts.

10. The EMPLOYER acknowledges and accepts the facsimile signatures on this contract as if they were the original signatures. The EMPLOYER further acknowledges receipt of a copy of the complete Joint Working Agreement.

Dated at _Tinley Pk._ this _29th_ day of _May_, 19_98_

**ACCEPTED:**

Laborers' Local Union No. _2 $ 5 0 0 1_

By: _____

CONSTRUCTION AND GENERAL LABORERS'
DISTRICT COUNCIL OF CHICAGO AND VICINITY.

By: _____
Bruno Caruso, President/Business Manager

_____
Joseph A. Lombardo, Jr., Secretary-Treasurer

BECHSTEIN CONST CORP.
(Name of Firm)

By: _____
(Name & Title)

17368-68CT
(Address)

TINLEY PARK ILL 60477
(City)         (State)   (Zip Code)

708-532-3500
(Telephone)

DISTRICT COUNCIL

EXHIBIT
A